**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROZELLE POLIDO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:23-cv-00459-PX |
| DAVID CROWLEY, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending in this civil rights action, Defendants David Crowley, Alexander Sorto-Guevara, and Mark Ray (collectively "Defendants") move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment, and Plaintiff Rozelle Polido requests court-appointed counsel. ECF Nos. 22, 26. The matter has been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss, or in the alternative, for summary judgment is GRANTED in part and DENIED in part, and the motion to appoint counsel is GRANTED.

**I.    Background**

The following Complaint facts are taken as true and construed most favorably to Polido. ECF No. 20; ECF No. 13-2.[1] On February 18, 2020, neighbors heard a commotion coming from Polido's apartment. They called law enforcement to perform a welfare check. ECF No. 20 at 3; ECF No. 13-2 at 6:08–21. Defendants arrived at Polido's apartment in full uniform and knocked

---

[1] The Court considers the video footage supplied by the officer's body warn camera as integral to the Complaint. *See Wallace v. Moyer*, No. CCB-17-3718, 2020 WL 1506343, at *4 (D. Md. Mar. 30, 2020) (a court may consider documents attached to a motion to dismiss, provided that they are "integral to and explicitly relied on in the complaint, and when the [plaintiff does] not challenge the document's authenticity.") (quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015)).

on the door.  ECF No. 20 at 3; ECF No. 13-2 at 8:26–45.  Polido opened the door while talking to her boyfriend on the phone.  ECF No. 20 at 3.

Officers Crowley and Sorto-Guevara entered Polido's apartment first and asked why she was yelling.  ECF No. 20 at 3.  Polido shared that she was "not okay" and that the conversation with her boyfriend had escalated.  ECF No. 20 at 3; ECF No. 13-2 at 9:54–10:10.  Polido also informed the officers that she suffers from Post-Traumatic Stress and Obsessive Compulsive disorders but currently was not taking her prescribed medication.  ECF No. 13-2 at 9:54–10:33.

Polido and her apartment were in disarray.  She was wearing only a t-shirt and thin under shorts.  *See* ECF No. 13-2.  The apartment was cluttered with trash, dirty dishes, and clothing scattered about.  *See id.* at 8:26–13:30.  The bed was unmade and appeared soiled.  *See id.*  A full-length mirror had been shattered.  *See id.* at 13:12–13:42.  The officers asked Polido how the mirror broke and she admitted to having hit the mirror in a panic.  *Id.*  Polido also told the officers that she had been hospitalized in the past for her mental health difficulties.  *Id.* at 22:18–24:01.

Officers Crowley and Sorto-Guevara continued to pepper Polido with questions which she tried to answer but "struggled to keep up."  ECF No. 20 at 4.  At points, Polido asked the officers to put their questions to her one at a time.  *E.g.,* ECF No. 13-2 at 10:10–10:20; 11:34–11:42; 13:55–14:09; 17:14–17:00.  Polido also told the officers that while she was "not okay," she neither intended to harm herself nor did she want to go to the hospital.  *Id.* at 11:00–12:49.  Instead, she wanted to find her insurance card because she intended to meet with a case manager that day who would help her organize her apartment and connect her to more comprehensive care.  *Id.*

As the encounter went on, Polido appeared calmer. *See* ECF No. 13-2. The officers agreed to stay with Polido until her boyfriend arrived. ECF No. 20 at 4; ECF No. 13-2 at 21:30–36. However, after nearly 20 minutes, the officers decided to take a different course. Officer Crowley announced that they would take Polido to the hospital. ECF No. 20 at 4; ECF No. 13-2 at 25:43–26:25. Polido became upset and, at first, said she did not want to go. ECF No. 13-2 at 27:52–28:19. Officer Crowley responded that she had no choice. ECF No. 20 at 4; ECF No. 13-2 at 27:52–28:19. After some back and forth, Polido agreed to go to the hospital, but asked if she could put pants on. ECF No. 20 at 4; ECF No. 13-2 at 28:27–29:47.

Polido began looking for her pants, but within a minute, the officers insisted that they needed to take her immediately because they "don't have time for this." ECF No. 13-2 at 30:18–22. Polido screamed that she wanted to put her pants on, at which point Crowley and Sorto-Guevara grabbed her by both arms, and with Ray's assistance, all three officers forcibly took down Polido, who weighed only 90 pounds at the time. ECF No. 20 at 4; ECF No. 13-2 at 29:50–30:54. While doing so, they slammed Polido into the broken shards of glass, slicing her leg. ECF No. 20 at 4; ECF No. 13-2 at 31:11–31, 50–53. Once Polido was handcuffed, emergency medical personnel placed her on a stretcher to be transported for treatment. ECF No. 20 at 4. The gash on her leg required fourteen stitches. *Id.*

On February 17, 2023, Polido filed suit in this Court against an array of law enforcement officers. ECF No. 1. On June 14, 2023, Polido amended the Complaint to dismiss all officers save for the three presently sued. ECF No. 20. She brings claims pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of 18 U.S.C. § 242, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (the "ADA"), and § 504 of the Rehabilitation Act, 29 U.S.C. 794.

ECF No. 20.  As the basis for jurisdiction, Polido lists the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141, transferred to 34 U.S.C. § 12601.  *Id*.  Defendants now move to dismiss all claims.  ECF No. 22.   The Court considers each argument in turn.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Because Polido proceeds pro se, the Court must give her pleadings an especially charitable reading so as to let all potentially viable claims proceed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But "even a *pro se* complaint must be dismissed if it does not allege a 'plausible claim for relief.'" *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679).  Ultimately, a complaint must "permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotes and alterations omitted).

**III.     Analysis**

    **A. No Private Right of Action: Violent Crime Control and Law Enforcement Act and 18 U.S.C. § 242**

Defendants first argue that Polido's claims under the Violent Crime Control and Law Enforcement Act, 34 U.S.C. § 12601, and a criminal provision for civil rights violations, 18 U.S.C. § 242, must be dismissed because neither statute creates a private right of action. ECF No. 22-1 at 8–9. They are correct. 34 U.S.C. § 12601, formerly 42 U.S.C. § 14141, authorizes the Attorney General to bring an action against law enforcement but does not similarly authorize suit for a private citizen, such as Polido. *See Boyd v. South Carolina,* No. 719CV00867BHHJDA, 2019 WL 2061495, at *3 (D.S.C. Mar. 28, 2019) (citing 42 U.S.C. § 14141(b) and collecting cases), *report and recommendation adopted*, No. 7:19-867-BHH, 2019 WL 2057961 (D.S.C. May 9, 2019), *aff'd*, 773 F. App'x 678 (4th Cir. 2019). Likewise, 18 U.S.C. § 242 criminally prohibits violations of constitutional rights, but it provides no avenue for an individual to sue a law enforcement officer. *See Little v. Experian Info. Sols., Inc.*, No. 8:22-00575-PWG, 2022 WL 17467708, at *3 (D. Md. Dec. 6, 2022) (collecting cases). Thus, because no private cause of action exists for these claims, they are dismissed with prejudice.

    **B. Americans with Disabilities Act and Rehabilitation Act Claims**

As for the ADA and Rehabilitation Act claims, Defendants contend that the claims fail because the statutes do not allow suit to proceed against individuals acting in their individual capacities. ECF No. 22-1 at 9. It is plain that the statutes "prohibit[] public entities, including any State government or instrumentality of the State, from discriminating against a qualified individual with a disability." *Jennings v. Frostburg State Univ.*, No. ELH-21-656, 2021 WL 5989211, at *9–10 (D. Md. June 27, 2023) (citing *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002) (stating courts construe the ADA and Rehabilitation Act

5

similarly)).  But the statutes do not cover individual capacity suits.  *Id.* (citing *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam)).

Even construing the Amended Complaint most charitably to Polido, the claims are limited to each officer's individual acts or omissions.  No facts make plausible that Polido sued the officers in their official capacities so that she can bring an ADA or Rehabilitation Act claim against the municipality directly.  *Cf. Jennings.*, 2021 WL 5989211, at *10 (stating a suit against a state employee in his official capacity "is essentially a claim against the State.").  Thus, the Court grants the motion to dismiss as to the ADA and Rehabilitation Act claims.

### C. Constitutional Claims

As to the Constitutional violations, the Amended Complaint merely lists the First, Fourth, Eighth, and Fourteenth Amendments as a "basis of jurisdiction," but does not otherwise explain the theory of each constitutional violation.  ECF No. 20 at 2.  Regarding the First Amendment, perhaps Polido attempts to sue the Defendants for physically restraining her after she protested her transport to the hospital.  True, the First Amendment protects individuals against retribution for any "verbal criticism and challenge directed at police officers."  *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). "Speech is often provocative and challenging…. [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."  *Id.* (*quoting Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)).   To state a claim in this context, a plaintiff must make plausible that:  (1) her speech was protected; (2) defendants' alleged "retaliatory action adversely affected" her "constitutionally protected speech"; and (3) "a causal relationship exists between" her speech and defendants' "retaliatory

action." *Tobey v. Jones*, 706 F.3d 379, 386–87 (4th Cir. 2013) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000)).

When viewing the facts most favorably to Polido, she makes plausible her protest of the officers' actions. *See* ECF No. 13-2 at 27:52–28:19. She clearly did not want to leave without putting on pants. *See id.* But no facts make plausible that the officers acted in response to her verbal protests. Rather, the officers had announced they were transporting her to the hospital and did not "have time" to wait for her to find her pants. *See* ECF No. 13-2 at 30:18–22. Nothing suggests that their forcible restraint had anything to do with the nature of her speech. *See Tobey*, 706 F.3d at 386–87; *cf.* ECF No. 20 (no alleged facts regarding protected speech). Thus, the First Amendment claim is dismissed.

Next, the Eighth Amendment prohibits "cruel and unusual punishment," but only for those imprisoned. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *see Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). And the Fourteenth Amendment makes the Eighth Amendment applicable in the pretrial detention context. *See Orem v. Rephann*, 523 F.3d 442, 445–46 (4th Cir. 2008). Neither apply here.

Rather, Polido's claims invoke her protections under the Fourth Amendment, which prohibits "unreasonable searches and seizures." *See Graham v. Connor,* 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest . . . it is most properly characterized as one invoking the privileges of the Fourth Amendment"). Polido avers that the officers used excessive force when restraining her in preparation to take her to the hospital. *See* ECF No. 20. Defendants respond that the complaint facts fail to make plausible

7

the officers' use of excessive force, and even if such force could be established, they are qualifiedly immune from suit. ECF No. 22-1 at 16–19. The Court considers each argument separately.

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)); *see also Graham*, 490 U.S. at 395. An officer may use only that force which is necessary to bring a citizen under lawful control. *See Graham*, 490 U.S. 396–97. An excessive force claim asks whether a reasonable officer in the defendant's shoes would have known that the force he used had been excessive given the particular circumstances at hand, and without regard to the officer's "'underlying intent or motivation.'" *E.W. by and through T.W.*, 884 F.3d at 179 (quoting *Graham*, 490 U.S. at 397); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). The inquiry focuses on "the moment that the force is employed," *Henry*, 652 F.3d at 531, to ascertain whether the totality of the circumstances supports that the use of force against the citizen as reasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015). This inquiry considers the severity of the crime; whether the individual poses an immediate threat to the officers or others' safety; and whether the individual is "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 399; *see also Lawhon v. Edwards,* 477 F. Supp. 3d 428, 445 (E.D. Va. 2020) (citing *Jones*, 325 F.3d at 527), *aff'd sub nom. Lawhon v. Mayes*, No. 20-1906, 2021 WL 5294931 (4th Cir. Nov. 15, 2021).

When viewing the facts most favorably to Polido, the claim survives challenge. Three officers forcible picked up Polido—a 90 pound woman wearing next to nothing—and slammed

her into shards of glass, all because she wanted to put on pants before leaving for the hospital. *See* ECF No. 20 at 4; ECF No. 13-2 at 28:27–29:47. Polido never threatened the officers and clearly she had no weapon on her at the time she was taken to the ground. *See id.*; *Graham*, 490 U.S. at 396, 399. Yet inexplicably, the officers took her to the floor with such force that she sliced open her leg on the glass that the officers had seen when they first made entry. *See* ECF No. 20 at 4; ECF No. 13-2 at 13:12–13:42. Given that Polido was outsized and outnumbered, and had done nothing to provoke the officers' violent reaction, the facts make plausible an excessive force claim.

The officers alternatively argue that the defense of qualified immunity warrants dismissing the claim. ECF No. 22-1 at 19–20. Government officials sued in their individual capacities are entitled to qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). The doctrine of qualified immunity "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry is two-fold. The Court must consider: (1) whether the facts established by the plaintiff "make out a violation of a constitutional right;" and if so (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 194 (2001)). The Court must undertake this inquiry viewing the facts "in the light most favorable to the party asserting the injury." *Mansoor v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003) (internal quotations

9

and citation omitted). Although the Court may consider these twin prongs in the order which best suits "the circumstances in the particular case at hand," *Pearson*, 555 U.S. at 236, it is preferable to consider first whether the officer's conduct violated the plaintiff's particular constitutional right because such a determination advances the discourse as to whether the right is clearly established. *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 236.

As for whether any constitutional right is clearly established, the Court must assess if the contours of the right "are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The "clearly established" analysis must focus on the law in place at the time of the alleged misconduct. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citation omitted); *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam). While qualified immunity should be decided at the earliest possible phase of litigation, disputed issues of fact may preclude such a determination until trial. *E.g., Burno-Whalen v. Maryland*, No. GJH-15-564, 2016 WL 1259556, at *5 (D. Md. Mar. 28, 2016); *see also Hicks v. Ferreyra*, 965 F.3d 302, 308 (4th Cir. 2020).

As best the Court can discern, the officers contend that qualified immunity applies because they did not commit a Fourth Amendment violation. ECF No. 22-1 at 19. They argue that "an objectively reasonable officer would have believed that Plaintiff had a mental disorder and presented a danger, at the very least, to the life or safety of herself, and thus the Officers' actions were reasonable and justified." *Id.* at 20. But as discussed, Polido's "mental disorder" did not "present a danger" sufficient enough to warrant three grown men pushing her into broken glass. *See* ECF No. 13-2 at 29:50–30:54, 31:11–31, 50–53. At the time the officers applied such

force, Polido was willing to go to the hospital but just needed pants. *See id.* She did not have a weapon and was not physically resisting the officers. *See id.* Accordingly, a reasonable factfinder could conclude that the officers' conduct constituted constitutionally impermissible excessive force. *See Bailey v. Kennedy*, 349 F.3d 731, 744 (4th Cir. 2003) (collecting cases).

Moreover, it has long been "clearly established that a police officer [is] not entitled to use unnecessary, gratuitous, and disproportionate force" against an individual who does not actually pose a threat to the officers' safety. *Jones*, 325 F.3d at 534. The Officers do not meaningfully argue the contrary. Thus, if the Complaint facts are borne out at trial, the Fourth Amendment right to be free from such disproportionate use of force is clearly established. *Graham*, 490 U.S. at 396, 399. The defense of qualified immunity does not bar the claim at this stage.

Defendants' remaining arguments are even less compelling. Defendants focus on a litany of statutory and common law grounds to justify their decision that Polido should have been transported to the hospital to address her mental health needs. ECF No. 22-1 at 10–15. Specifically, Defendants cite state statutes which permit police officers to petition for emergency mental health evaluation where an individual "presents a danger to the life and safety of the individual or others." Md. Code. Ann., Health-Gen. §§ 10-622 &10-624. But the gravamen of Polido's Fourth Amendment challenge does not concern *why* the officers decided to transport her to the hospital, but *how* they went about restraining her. *See* ECF No. 20 at 4.

Likewise, Defendants' reliance on the "community caretaker doctrine" misses the mark. ECF No. 22-1 at 14. Officers are, in certain circumstances, permitted to perform warrantless *searches* when responding to emergency or rescue situations. *Olson v. State*, 208 Md. App. 309, 339 (2012) (citing *United States v. McGough*, 412 F.3d 1232, 1237 (11th Cir. 2005)). But this

11

exception to the warrant requirement by no means implicates the degree of force an officer can use on an individual—even if the officers' presence on the scene arose, as it did here, in response to a person experiencing a mental health crisis. Simply put, a welfare check for a mentally ill person is not a blank check to exercise all manner of force. Polido, like any other citizen, still enjoys the Fourth Amendment right to be free from that unwarranted intrusion. Thus, the Fourth Amendment excessive force claim survives dismissal.

## IV. Dismissal With or Without Prejudice

Defendants ask the Court to dismiss all claims with prejudice. *See* ECF No. 22. The Court retains discretion in determining whether claims should be dismissed with or without prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). But, when the claims suffer from legal defects that make the claims unamendable, dismissal with prejudice is warranted. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

Because no civil action can be predicated on 18 U.S.C. § 242 and the Violent Crime Control and Law Enforcement Act, those claims are dismissed with prejudice. *See, e.g.*, *Boyd,* 2019 WL 2061495, at *3; *Little,* 2022 WL 17467708, at *3. Similarly, because Polido was neither imprisoned or detained at the time the officers allegedly used excessive force, her Eighth and Fourteenth Amendment claims are dismissed with prejudice. *See Orem*, 523 F.3d at 445–46; *Hare*, 74 F.3d at 639.

The remaining claims will be dismissed without prejudice out of an abundance of caution. The Court recognizes that Polido has proceeded pro se. She will receive the benefit of court appointed counsel[2] who can thoroughly assess which claims should proceed based on the

---

[2] The Court grants Polido's motion for Court appointed counsel (ECF No. 26) because Polido has demonstrated she maintains a colorable claim, cannot afford counsel, and suffers from an array of physical and mental conditions that would compromise her efforts to represent herself. *See Chen v. Commodore Mgmt. Co., Inc.*, No. TJS-23-1838, 2023 WL 7130946, at *3 (D. Md. Oct. 29, 2023) (internal quotation marks omitted) (*quoting*

pleaded facts. Although the Court remains skeptical that a claim will lie under the First Amendment or the disability discrimination statutes, appointed counsel will be given the full opportunity to review the case and ascertain whether any other claims can be plausibly pleaded. Thus, those claims are dismissed without prejudice.

## IV.     Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss, and GRANTS Polido's motion to appoint counsel.  A separate appointment shall issue.  Within 28 days from the appointment order, counsel shall file an amended complaint to which Defendants shall have 14 days to answer or otherwise respond.  A separate Order resolving Defendants' motion will also follow.

January 24, 2024  
Date

/s/  
Paula Xinis  
United States District Judge

---

*Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989)).